UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JERRY JAMES STANTON,

    Plaintiff,

v.

NANCY HUTCHINS,
Branch County Register of Deeds,
BAMBI SOMERLOTT,
Hillsdale County Register of Deeds,
SANDRA S. THATCHER,
Branch County Treasurer,

LAURIE ADAMS, Coldwater Township Assessor,
JEFFREY BUDD, Coldwater Township Treasurer,

ROBERT J. KLEINE, State of Michigan Treasurer,

MIKE COX, Michigan Attorney General,
KEVIN T. SMITH, Michigan Assistant Attorney General,

MICHAEL A. STIMPSON, Michigan Tax Tribunal Judge,

PATRICK W. O'GRADY, Circuit Court Judge,
Branch County, Michigan,

MARK STODDARD, Michigan Appeals Court Counsel,
BRIAN DEITRICH, Clerk, Michigan Appeals Court,

DONALD S. OWENS, WILLIAM C. WHITBECK,
STEPHEN L. BORRELLO, DAVID H. SAWYER,
JOEL P. HOEKSTRA, DOUGLAS B. SHAPIRO,
Michigan Court of Appeals Judges,

CLIFFORD B. TAYLOR, MICHAEL F. CAVANAUGH,
ELIZABETH A. WEAVER, MARILYN KELLY,
MAURA D. CORRIGAN, ROBERT P. YOUNG JR.,

Case No. 1:10-cv-74

HONORABLE PAUL L. MALONEY

and STEPHEN J. MARKMAN,  
Justices of the Michigan Supreme Court,

    Defendants.

_____

# OPINION and ORDER
*" Stanton 2 "*

**Denying Plaintiff's Motion to Reconsider *Stanton 1*, 2010 WL 882822 (W.D. Mich. Mar. 8, 2010)**
(Adhering to Denial of Plaintiff's Application for Preliminary Injunctive Relief)

This court has federal-question jurisdiction because the plaintiff, Mr. Jerry James Stanton ("Stanton"), purports to assert claims under the United States Constitution, a federal civil-rights statute (42 U.S.C. § 1983), several provisions of Title 18 of the U.S. Code (§§ 1341 and 1346), and at least two provisions of RICO, 18 U.S.C. §§ 1962 and 1964. *See* Complaint filed March 4, 2010 ("Comp") at 1-3. Proceeding *pro se*, Stanton asserts 38 claims against 25 defendants, all of whom are employed by the State of Michigan's executive or judicial branches or one of its county or local government subdivisions' judicial or executive branches:

    2 Register of Deeds for Branch County and Hillsdale County (Hutchins and Somerlott)  
    2 Coldwater Township Assessors (Adams and Budd)  
    State Treasurer Kleine and Branch County Treasurer Thatcher  
    State AG Cox and Assistant State AG Smith  
    State Tax Tribunal Judge Stimpson  
    Branch County Circuit Court Judge Patrick O'Grady  
    2 Court of Appeals employees (Counsel Mark Stoddard and Clerk Deitrich)  
    6 Court of Appeals Judges (Owens, Whitbeck, Borrello, Sawyer, Hoekstra, Shapiro)  
    7 Supreme Court Justices (Taylor, Cavanagh, Weaver, Kelly, Corrigan, Young, Markman)

*See* Comp ¶ 8. Stanton owns two parcels of real property in the City of Coldwater, Branch County, Michigan, and brings this action to remedy alleged violations of his constitutional and natural rights with regard to those properties, *see* Comp ¶¶ 244-245, including the right to freely acquire and keep

private property without interference or harassment or overriding government claims thereto (consistent with the understanding which prevailed in the colonies and Great Britain before the founding of the United States of America), the right to be left alone, the right to the pursuit of happiness and prosperity, and the right to a republican form of government with checks and balances and strictly limited powers where natural individual rights are not violated even with the approval of a majority of voters or elected officials or judges, *see* Comp ¶¶ 3-7 (citing Ex A ("Branch County Instrument #2006-07381, Page 34 ¶ 46")) and Comp ¶ 13. Although the caption does not state that Stanton is suing the defendants in their personal capacity, the body of the complaint does state that he is seeking monetary damages against them in that capacity. *See* Comp at 4, Section III-h.

Among many other types of relief sought in the complaint, Stanton's application for preliminary injunctive relief asks this court to prevent the State of Michigan from requiring him to pay the property taxes which a state tribunal has apparently held that he owes, as a condition precedent to bringing an appeal, by a March 14, 2010 deadline, in the Michigan state system. He contends that this court should effectively reverse or disregard a judgment of the Branch County, Michigan circuit court holding that the law requires such payment in that sequence, on the ground that that court lacked jurisdiction and hence that the resultant judgment is void. *See* P's PI App at 1-2. The PI application weaves in and relies on themes and legal premises from Stanton's complaint, including the notion that the Michigan tax and judicial system, in so requiring, and in refusing to consider his constitutional objections, violates the Northwest Ordinance of 1787 in some unspecified way, violates his natural and constitutional rights.

Stanton explains that he cannot or will not simply pursue a direct appeal to the Michigan Court of Appeals because

> Plaintiff has already established for the record of this Court [presumably in his complaint, summarized and discussed at length below] that the Michigan Appeals Court will completely subvert and circumvent, any appeal of the Plaintiff thereby denying due process and creating yet another basis of charge against the Court of Appeals Judges and Clerks just as the Branch County Circuit court and above named defendants have done yet again.

P's PI App at 2. As will be seen below, however, Stanton has not yet demonstrated or adequately explained – if he ever will be able to do so – that the Michigan Court of Appeals allegedly "subverted" or improperly thwarted or rejected his appeal from any judgment or order. Apparently Stanton argued before the Circuit Court of Branch County that that court lacked jurisdiction, relying on *Hibbs v. Winn*, 542 U.S. 88 (2004), which he characterized – without any quotation or citation to the majority opinion – as holding that "the State Courts lose absolute jurisdiction and protection of the Tax Injunction Act when their proceedings fail to allow and address constitutional arguments before them." P's PI App at 1-2. In any event, Stanton asked this court to preliminarily enjoin any action to enforce the Branch County Circuit Court judgment by way of foreclosure and/or eviction. *Id.* at 3. This court denied Stanton's application for preliminary injunctive relief. *See Stanton v. Hutchins et al.*, No. 1:2010-cv-74 Document 10, 2010 WL 882822, *2-11 (W.D. Mich. Mar. 8, 2010) (Paul L. Maloney, C.J.) ("*Stanton 1*").

**On March 25, 2010, Stanton filed a motion for reconsideration. For the reasons that follow, the court will deny reconsideration. Because the motion clearly lacks merit, the court will not require the defendants to respond.**

First, Stanton disagrees with the court's statement that his complaint and PI application cited many sources which have no precedential force in Sixth Circuit federal courts, "such as the Magna

Carta, the Northwest Ordinance of 1787, and former constitutions of various states . . . ." Stanton states as follows:

> 4. The history of jurisprudence practiced by the United States Supreme Court is replete with examples of sound reasoning being applied to the existence of Rights found in the History of the English Law prior to the founding of this nation. Two examples rung out loud as to how prior authorities reach the Supreme Court and therefore reach the 6th Circuit Court and this Court as well:
>
>> A.   Void Judgment
>> "Since Lord Bacon's day a decree in equity may be reversed or revised for error of law, . . . Such . . . may be filed . . . in a federal court other than the court, federal or state, which rendered it." (emphasis added) *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 259 (1944)
>>
>> B.   Magna Carta (CR 1, pp. 14 and 78)
>>
>> ". . . as a citizen of that State. His 'privileges and immunities' must not be impaired, and all the privileges of the English Magna Charta in favor of freemen are collected upon him . . .
>>
>> "Now, what are privileges and immunities' in the sense of the Constitution? They are undoubtedly the personal and civil rights which usage, tradition, the habits of society, written law, and the common sentiments of people have recognized as forming the basis of the institutions of the country . . . . **It assumes that there were privileges and immunities that belong to an American citizen, and the State is commanded neither to make nor to enforce any law that will abridge them**." (emphasis added) *In re: Slaughter House Cases*, 83 U.S. 36, 55 (1872)
>>
>> "Habeas Corpus Act of 1679, 31 Car. 2, c. 2, described by Blackstone as a 'second magna charta, and stable bulwark of our liberties." 1 Blackstone 133. The Act governed all persons "committed or detained . . . for any crime." § 3 *Hamdi v. Rumsfeld*, 124 S.Ct. 2633 (2004) (Scalia Dissenting)
>>
>> ". . . **we are heirs to a tradition given voice 800 years ago by Magna Carta, which, on the barons' insistence, confined executive power by 'the law of the land.'**" *Hamdi, supra* (J. Souter, dissenting in part)

5. Despite the reasoning, "The Court" is required to assume that there were privileges and immunities (i.e. Rights) th[at] predate Constitutions of the Federal and State governments, the Courts and their precedents, and "the Court" is instructed by the U.S. Supreme Court to be watchful and vigilant in protecting these rights from indirect attacks and usurpations by legislative and judicial acts (CR 1, pp. 14-15, Ex. A, pp. 19 & 26 respectively):

> "**[T]he court must be vigilant to scrutinize the attendant facts with an eye to detect and a hand to prevent violations of the Constitution by circuitous and indirect methods.** Constitutional **provisions for the security of person and property are to be liberally construed**, and 'it is the duty of courts to be watchful for the constitutional rights of the citizen, and **against any stealthy encroachments thereon**.' *Boyd v. United States*, 116 U.S. 616, 635 . . . ; *Gouled v. United States*, 255 U.S. 304 . . . ." (emphasis added)

*Byars v. US*, 273 US 28, 32 (1927)

> "**It does not at all follow that every statute enacted ostensibly for the promotion of these ends is to be accepted as a legitimate** exertion of the police powers of the state. **There are, of necessity, limits beyond which legislation cannot rightfully go.** While every possible presumption is to be indulged in favor of the validity of a statute, (Sinking Fund Cases, 99 U.S. 718, [sic]), **the courts must obey the constitution rather than the lawmaking department of government,** and must, upon their own responsibility, determine whether, in any particular case, these limits have been passed. 'To what purpose,' it was said in *Marbury v. Madison*, 1 Cranch 137, 167, '**are powers limited, and to what is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained? The distinction between a government with limited and unlimited powers is abolished, if those limits do not confine the persons on whom they are imposed, . . .**' <u>The courts are not bound by mere forms, nor are they to be misled by mere pretenses.</u> They are at liberty, indeed, are under a solemn duty, to look at the substance of things, whenever **they enter upon the inquiry whether the legislature has transcended the limits of its authority.** If therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, **it is the duty of the courts to so adjudge, and thereby give effect to the constitution.**"

*Mugler v. Kansas*, 123 US 623, 661 (1887).

> 6. "The Court" . . . cannot be excused from its duty to . . . and presumed knowledge of the fundamental law of the Land being the Rights of THE PEOPLE, such as the Plaintiff, and has therefore <u>acted outside and in abuse of its discretion</u> in determining that the fundamental law, the Magna Carta (Magna Charta) upon which the Constitution for the United States of America (1787) is Founded, is not binding upon "The Court," this Court, and the Courts of the 6th Federal Circuit Court of Appeals.
>
> 7. "The Court" . . . is similarly held to the force and effect of the Northwest Ordinance (1787, predating the Constitution), asserted or not, but in this case so asserted for its enforcement, as part of the fundamental law of the land prior to the creation of the United States of America under the Present Constitution (1787) and the subsequent creation of this and the 6th Circuit Court of Appeals who are creations of the Legislative Branch, which is a creature of the Constitution, and is bound to the Constitution and the fundament al law (CR 1, p. 83, *see also* Plaintiff's Ex. A, pp. 18 and 19) . . . .

Stanton's Motion for Reconsideration filed March 25, 2010 ("P's Recon Mot") at 2-4 ¶¶ 4-7. Stanton goes on to the same effect regarding the alleged direct precedential force of current or former constitutions of the States of Virginia and North Carolina, the Habeas Corpus Act of 1679, the English Bill of Rights of 1689, and "the Common Law (as explicitly preserved in Section 14 of the Northwest Ordinance (1787) . . . ." *See* P's Recon Mot at 5-7 ¶¶ 8-12; *see also id.* at 7-10 ¶¶ 13-19.

But Stanton has shown only that federal courts sometimes look to non-American and pre-American British, colonial, or Early American documents such as the Magna Carta, Blackstone's Commentaries, or former versions of State Constitutions, for background, for guidance in addressing common issues that were encountered back then and today, and for insight into the context in which the Founding Fathers drafted our Constitution and therefore insight into how they understood and intended words and concepts used in the Constitution or other, lesser American laws. None of the sources cited hold or suggest that Magna Carta, the British Habeas Corpus Act of 1679, Northwest Ordinance of 1787, English Bill of Rights of 1689, or other such pre-American and/or non-American

documents are themselves directly precedentially binding, and this court finds no Supreme Court or Sixth Circuit precedent so holding.[1]

**The next section of Stanton's reconsideration is at times unclear, and lacks merit when it is comprehensible.** Stanton repeatedly accuses the court of abusing its discretion by "ignoring" evidence. *See* P's Recon Mot at 10-11 ¶¶ 20-22 and 16-17 ¶¶ 29-30. Among other things, Stanton accuses the court of "ignoring evidence of Public record of Plaintiff's efforts to obtain due process and review of his constitutionally/federally protected Rights argument before the Michigan Courts and Administrative proceedings . . . ." P's Recon Mot at 11 ¶ 22. Yet Stanton fails to explain what "evidence of public record" he refers to, let alone which elements of which claims that evidence putatively supports – much less identify some *specific* defect in this court's opinion (denying preliminary injunctive relief) which would be cured or modified by reference to the supposedly ignored evidence. He fails to explain how his attempts to obtain relief in Michigan's state courts are relevant to the court's denial of preliminary injunctive relief.

Stanton again asserts his ludicrous notion that the defendants, by "failing" to respond to documents which he sent to them, somehow conceded and "stipulated" to his interpretation of the law and the rights and duties it recognizes. *See* P's Recon Mot at 12-13 ¶ 23. He still presents no case law or other authority for that odd proposition.

Stanton challenges the court's accurate statement that his complaint and/or preliminary

---

[1] In any event, Justice Scalia's dissent in *Hamdi*, however cogent or persuasive, is by definition *not* the law because it is a dissent rather than the opinion of a majority or plurality of the Court. The same is true of at least part of Justice Souter's partial dissent in *Hamdi*, also cited by Stanton.

injunction application sometimes cited case law for propositions but failed to identify the language which allegedly supports his claims, or even the number of the page(s) on which that language is, in his view, located. He complains that "his Suit is replete with citations to case law supporting the existence of his fundamental Rights (See: citations related to CR1 Within the whole of this document)", P's Recon Mot at 13 ¶ 24, but he does not show that the court erred in any particular instance by noting his failure to provide quotation and/or page citations for judicial decisions on which he sought to rely, *see id.* at 13 ¶ 25.

Stanton next challenges the court's statement that his complaint and/or preliminary-injunction ("PI") application relied on *Hibbs v. Winn*, a 2004 Supreme Court decision, without citing or quoting the majority opinion therein. He proceeds to quote portions of *Hibbs* interpreting or applying the Tax Injunction Act, *see* P's Recon Mot at 13-14 ¶ 26, and accuses the court of attempting to shirk its duty to exercise jurisdiction as permitted by the Tax Injunction Act, *see id.* at 20 ¶ 39. But any putative error by the court regarding Stanton's citation/quotation from *Hibbs* or any other decision interpreting the Tax Injunction Act is immaterial here, because this court's denial of his PI application was in no way predicated on interpretation of the Tax Injunction Act. On the contrary, this court declined to consider whether or not the Tax Injunction Act would bar this court from reviewing the state-court decision in question, because there is reason to believe that a different, independent ground may exist for declining jurisdiction. Namely, the court expressly stated that "*whether or not the Tax Injunction Act (28 U.S.C. § 1[3]41) bars this court from reviewing the Branch County Circuit Court's judgment*, this court is likely to hold that the *Rooker-Feldman* doctrine does bar such review." *Stanton 1*, 2010 WL 882822 at *11 (emphasis added).

Stanton also asserts that the court

> had the powerful tools of the Internet and West Law completely available to them
> and used it to make argument [sic] of its case [sic] that doctrines and Rules of Courts
> override the Civil RICO statute, Title 42 [U.S.C.] § 1983, and Title 28 U.S.C. § 1341
> (the Tax Injunction Act) in order to make the claim that there can be no federal issue
> before the District Courts to challenge the constitutionality of a Provision of [a] State
> Constitution and a State Statute, and the legal of unconstitutional actions executed
> there under.

P's Recon Mot at 14 ¶ 26. This argument fails because the court's opinion denying preliminary injunctive relief nowhere held or implied that "doctrines and Rules of Courts override" RICO, section 1983, or the Tax Injunction Act.

**Stanton next complains that the court did not "provide specific instruction on the means by which Plaintiff has failed to explain elements of the COUNTS."** P's Recon Mot at 15-16 ¶ 27. It is not the court's duty, nor would it be proper for the court to "instruct" Stanton on how to prove the elements of his claims or otherwise prosecute his case. *See Anderson v. Prelesnik*, No. 1:2008-cv-250 Document 47, slip op. at 3, 2010 WL _____, *___ (W.D. Mich. April 1, 2010) ("*Anderson 2*") ("[T]o the extent that the petitioner is asking this Court for legal advice with regard to this petition or any other matter, it is both inappropriate and impractical for this Court to render such advice to a party.") (citing, *inter alia*, *In re Nicole Energy Servs., Inc.*, – B.R. –, –, 2010 WL 668639, *6 (Bankr. S.D. Ohio Feb. 25, 2010) ("The Court is not permitted to give legal advice to any party, represented or not.") and *Aladimi v. Grant Cty. Detention Ctr.*, 2010 WL 399107, *5 (E.D. Ky. Jan. 27, 2010) ("Article III of the federal Constitution limits the jurisdiction of federal courts to consideration of actual cases and controversies, and federal courts are not permitted to render advisory opinions. Neither the Court, nor its administrative staff, are empowered either to dispense legal advice to parties, or to practice their case on their behalf.") and *Burke v. Morgan*, 2009 WL 1598420, *2 (E.D. Ky. June 4, 2009) ("Specific federal rules govern the discovery process

in federal courts. This Court is not empowered either to dispense legal advice to parties, or to practice their case on their behalf.") and *Franklin v. Palmer*, 2009 WL 426302, *1 (E.D. Mich. Feb. 20, 2009) ("Petitioner requests information as to 'any avenues for possible relief.' This fairly vague request may be seeking generalized legal advice[,] which the court will not provide.") and *Hershey v. Carlson*, 2007 WL 3003172, *1 (W.D. Mich. Oct. 11, 2007) ("The Court may not provide legal advice to litigants.").

As this court has previously explained,

If the Court offered advice to a party, it would effectively abdicate its impartiality by aiding that party's case, potentially at the expense of the opposing party. Such an impropriety could not be rectified by offering advice to the other side, for that would only entangle the court further in a role which is inconsistent with its charge as an absolutely neutral tribunal. *See Brown Bark III, LP v. Vento*, 2009 WL 2513449, *2 n.1 (D. Ariz. Aug. 13, 2009) (James Teilborg, J.) ("The court should not give a party advice because advice 'would undermine district judges role as impartial decisionmakers.'") (quoting *Pliler v. Ford*, 542 U.S. 225, 231 (2004) (J. Thomas for the Court, joined by JJ. Rehnquist, O'Connor, Scalia and Kennedy)).

The ironclad prohibition on courts rendering legal advice to litigants does not change merely because a party elects to proceed *pro se*. As the Supreme Court has stated,

> "A [litigant] does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure. Nor does the Constitution require judges to take over chores for a *pro se* [litigant] that would normally be attended to by trained counsel as a matter of course."

*Martinez v. Court of App. of Calif., 4th App. Dist.*, 528 U.S. 152 (2000) (Stevens, J., for the majority) (quoting *McCaskle v. Wiggins*, 465 U.S. 168, 183-84 (1984) (O'Connor, J., for the majority)).

Moreover, if the Court began a practice of responding to requests for legal advice, it would soon be inundated with such requests, particularly from the large and growing number of *pro se* litigants (incarcerated and otherwise). That would consume scarce judicial resources, diverting them from other cases where the parties are equally entitled to a reasonably expeditious, considered resolution of their controversies.

*Anderson v. Prelesnik*, No. 1:2008-cv-250 Doc 47, slip op. at 3-5, 2010 WL _____, *___ (W.D. Mich. Apr. 1, 2010) (Paul L. Maloney, C.J.).

Stanton next complains that this court erred by stating that his complaint acknowledged the State's right to tax property "allegedly using U.S. Supreme Court cases. Plaintiff's review of his paragraph 10 contains no such information: * * *." P's Recon Mot at 16 ¶ 28 (going on to quote Comp ¶ 10). What the court actually wrote is this:

> Significantly, Stanton acknowledges the existence of ancient U.S. Supreme Court precedent which, according to his own characterization, holds that the States legitimately have the power to tax property, but he apparently urges this court to rule contrary to those precedents. *See* Comp at 10.

*Stanton 1*, 2010 WL 882822 at *___. The court cited *page* 10, not *paragraph* 10, of Stanton's complaint (a citation to paragraph 10 would include a paragraph symbol like this: ¶). But Stanton is correct that the court in citing page ten of his complaint for that proposition. He fails to explain, however, how that error warrants reconsideration of the denial of preliminary injunctive relief. This court never relied on the alleged Supreme Court precedent upholding State taxation of private property as a basis for its conclusion that Stanton was highly unlikely to prevail on the merits of any his claims.

**Section III of Stanton's reconsideration brief complains that the court has failed to comply with precedents stating that *pro se* litigants are to be treated more indulgently than litigants who are represented by counsel.** *See* P's Recon Mot at 17-19 ¶¶ 32-34. In addition to the discussion above about the prohibition on courts giving legal advice to any litigants, including

*pro se* litigants, the court also notes that our precedents do <u>not</u> require the court to excuse a litigant's failure to establish the elements of his claims or to defeat properly raised defenses – or, on an preliminary-injunctive relief, to show that he *likely* will be able to establish those elements and defeat such defenses – merely because he is *pro se*. The court should and does regularly overlook citation, grammatical, spelling, and formatting errors or irregularities by *pro se* litigants which would be viewed unfavorably if committed by licensed attorneys. The court is mindful of its duty to accord a more liberal construction to the pleadings of *pro se* litigants, *see Iswed v. Caruso*, 2009 WL 230137, *1 (W.D. Mich. Jan. 29, 2009) (Maloney, C.J.) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972), but the "[p]rinciples requiring generous construction of *pro se* pleadings are not without limits", *Miller v. Royal Manor Health Care, Inc.*, 2006 WL 2666427, *4 (N.D. Ohio Sept. 14, 2006) (citing, *inter alia*, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (*pro se* prisoner complaint's reference to the defendant officers' "personal involvement" in the alleged constitutional violations was insufficient to read it as stating a claim against them in their personal capacities)). *See, e.g., Searcy v. Corr. Med. Servs., Inc.*, 2009 WL 910412, *7 (W.D. Mich. Mar. 31, 2009) (Maloney, C.J.) ("Reasonable jurists may disagree over the line between very liberal construction of a *pro se* pleading and serving as an advocate for a *pro se* party. Nonetheless, the plain and ordinary meaning of the words in Searcy's complaint, even liberally construed, must be characterized as stating a claim for negligence – perhaps gross negligence – but not any more culpable state of mind."). Simply put, Stanton's choice to proceed *pro se* cannot excuse his failure to show that he is likely to succeed on the merits of any of his claims, e.g., a failure to proffer precedent undermining the court's prediction that his claims will most likely be barred by absolute prosecutorial and judicial immunity, qualified official immunity, and most broadly, the jurisdictional bar of the Supreme Court's *Rooker-Feldman*

doctrine.

**That leads to Section IV of Stanton's reconsideration brief,** where he begins by contending that this court has flouted its obligation to exercise jurisdiction. This may be in response to the court's statement that the *Rooker-Feldman* doctrine will likely bar this court from reviewing the decisions or judgments of the Branch County, Michigan circuit court (or *any* state court) under the circumstances. Stanton presents no precedent suggesting that the court erred in predicting and describing *Rooker-Feldman*'s likely application to this case.

Stanton's Section IV next attempts to submit additional exhibits in support of his application for preliminary injunctive relief. *See* P's Recon Mot at 19-20 ¶¶ 35-38. To the extent that Stanton has again submitted items already included in the record prior to *Stanton 1*, the court considered said exhibits before denying his application for preliminary injunctive relief. To the extent that Stanton has submitted items that were not in the record prior to *Stanton 1*, he is not permitted to do so. A party may not submit new materials on reconsideration unless they were unavailable to him, in the exercise of due diligence, prior to the decision he wants reconsidered (for example, if new binding precedent on point has been issued by the U.S. Supreme Court or Sixth Circuit Court of Appeals after the date of the court's decision (or after the submission of the parties' briefs) but before the filing of the reconsideration motion).

Stanton goes on to argue for the applicability of the civil RICO statute and the Honest Services Fraud statute (18 U.S.C. § 1346), *see* P's Recon Mot at 21-25 ¶¶ 44-52, but he fails to point to specific language in any binding precedent suggesting that the court erred in its conclusion that he likely has not stated a claim on which relief could be granted under these and the other statutes

-14-

he relies on in his complaint. His subsection entitled "Jurisdiction under Title 42 [U.S.C.] § 1983" (P's Recon Mot at 25-27 ¶¶ 53-58) is far from clear, and does nothing to identify a reconsiderable error in this court's denial of his PI application. The next subsection, entitled "Judicial and Executive Immunity are not Absolute as Court's Order Implies" (P's Recon Mot at 27-31 ¶¶ 59-67) fails to identify any specific defect in this court's reasoning and conclusion that those immunity doctrines will likely be held to defeat many of Stanton's claims.

**Section VI of Stanton's reconsideration brief** unsuccessfully attempts to undermine the court's conclusion that the *Rooker-Feldman* doctrine will likely strip this court of jurisdiction to review the decisions and proceedings of the Michigan state courts here. For example, Stanton seems to argue that *Rooker* does not apply whenever the plaintiff invokes 42 U.S.C. § 1983 or the civil RICO statute, *see* P's Recon Mot at 31 ¶ 68, but he cites no authority, binding or persuasive, to support this conclusory assertion. He also asserts that "*Rooker* (1923) . . . does not survive the present construction of Federal Rule of Civil [P]rocedure Rule 60(b)(4) governing void judgments," *see* P's Recon Mot at 32 ¶ 70; that "*Rooker* . . . does not survive [sic] the Right of Void Judgment from since the age of Lord Bacon, well predating the creation of this abhorrent doctrine by a few hundred years, as cited by the . . . *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 [1944]", *see* P's Recon Mot at 32 ¶ 71; and that *Rooker* did not survive the enactment of the Tax Injunction Act, 28 U.S.C. § 1341, *see* P's Recon Mot at 32 ¶ 72. Again, however, Stanton presents no authority for these three propositions either. Moreover, whether or not Stanton or this court personally believe the *Rooker-Feldman* doctrine to be "abhorrent", or should not have been created, *see* P's Recon Mot at 32-33 ¶¶ 73-74, it is the law as handed down by the U.S. Supreme Court, and

this subordinate federal court is obligated to follow it until the Supreme Court or Congress overrules or modifies it.

**Section VII of Stanton's reconsideration** merely reiterates Stanton's unfounded assertion that this court has systematically and willfully mischaracterized his PI application's dearth of specific case law language and citations to support his many novel theories and claims, to no avail. *See* P's Recon Mot at 33-34 ¶¶ 76-78.

**In the final section of Stanton's reconsideration brief, Section VIII**, he purports to address the four elements of our Circuit's test for preliminary injunctive relief. *See* P's Recon Mot at 34-37 ¶¶ 79-97. This section's discussion of likelihood of success on the merits merely incorporates arguments made in earlier sections of his reconsideration brief, *see id.* at 34-35 ¶¶ 80-84, which this court has already addressed and found wanting. The remainder of this section rehashes arguments which Stanton made on application for PI relief, and urges the court to consider political and policy arguments which are largely beyond its purview, *see id.* at 35-37 ¶¶ 85-97 (irreparable harm, harm to others if PI issues, and the public interest).

## ORDER

**Plaintiff's motion for reconsideration** of *Stanton v. Hutchins et al.*, No. 1:10-cv-74 Document 10, 2010 WL 882822 (W.D. Mich. Mar. 8, 2010) **[document # 17] is DENIED.**

This is not a final and immediately appealable order.[2]

---

[2]

Still pending before the Court are these three motions by the defendants:

**IT IS SO ORDERED** on this 7th day of April 2010.

                                                  /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  Chief United States District Judge

---

–     the motion for judgment on the pleadings of defendants Adams and Budd (Coldwater Township assessor and treasurer), document #20 filed on Monday, March 29, 2010

–     the motion to dismiss for failure to state a claim on which relief can be granted or for summary judgment of defendant Borello and 19 other defendants, document #12 filed on Wednesday, March 17, 2010

–     the motion to dismiss of defendants Hutchins, Somerlott, and Thatcher (Hillsdale and Branch County Registers of Deeds, and Branch County Treasurer), document #29 filed on Friday, April 2, 2010

Both these motions are "dispositive" motions. *See* Western District of Michigan Local Civil Rules ("W.D. MICH. LCIVR") 7.2(a) (listing motion to dismiss as dispositive motions) and 7.2(b) (all motions not listed in LCivR 7.2(a) are considered non-dispositive).

A party has 28 days to respond to a dispositive motion, *see Glass v. Kellogg Co. Bakery, Confectionery, Tobacco Workers, and Grain Millers Pension Plan*, 2009 WL 2611269, *2 (W.D. Mich. Apr. 3, 2009) (Maloney, C.J.) (citing W.D. MICH. LCIVR 7.2(c)). The 28 days start the day *after* the party receives the motion, *see* Federal Rules of Civil Procedure ("FED. R. CIV. P.") 6(a)(1)(A). The court counts all days, including weekends and holidays, FED. R. CIV. P. 6(a)(1)(B).

All other pending motions are non-dispositive and have accordingly been referred to the United States Magistrate Judge for rulings pursuant to 28 U.S.C. § 636(b)(1).