UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JERRY JAMES STANTON, | Case No. 1:10-cv-74 |
| Plaintiff, | |
| v. | HONORABLE PAUL L. MALONEY |
| | Magistrate Judge Joseph G. Scoville |
| NANCY HUTCHINS, Branch County Register of Deeds, BAMBI SOMERLOTT, Hillsdale County Register of Deeds, SANDRA S. THATCHER, Branch County Treasurer, | |
| LAURIE ADAMS, Coldwater Township Assessor, JEFFREY BUDD, Coldwater Township Treasurer, | |
| ROBERT J. KLEINE, State of Michigan Treasurer, | |
| MIKE COX, Michigan Attorney General, KEVIN T. SMITH, Michigan Assistant Attorney General, | |
| MICHAEL A. STIMPSON, Michigan Tax Tribunal Judge, | |
| PATRICK W. O'GRADY, Circuit Court Judge, Branch County, Michigan, | |
| MARK STODDARD, Michigan Appeals Court Counsel, BRIAN DEITRICH, Clerk, Michigan Appeals Court, | |
| DONALD S. OWENS, WILLIAM C. WHITBECK, STEPHEN L. BORRELLO, DAVID H. SAWYER, JOEL P. HOEKSTRA, DOUGLAS B. SHAPIRO, Michigan Court of Appeals Judges, | |
| CLIFFORD B. TAYLOR, MICHAEL F. CAVANAUGH, ELIZABETH A. WEAVER, MARILYN KELLY, MAURA D. CORRIGAN, ROBERT P. YOUNG JR., and STEPHEN J. MARKMAN, | |

Justices of the Michigan Supreme Court, |
|
    Defendants. |
|
|

**OPINION and ORDER**
*" Stanton 4 "*

**Denying the Plaintiff's Motion for Relief from Judgment (Doc 48);
Denying the Plaintiffs' Motions at Documents 22, 24 and 25;
Denying without Prejudice the Plaintiff's Sanction Motions (Docs 32 and 43);
Terminating and Closing the Case**

This court had federal-question jurisdiction because the plaintiff, Mr. Jerry James Stanton ("Stanton"), purports to assert claims under the United States Constitution, a federal civil-rights statute (42 U.S.C. § 1983), several provisions of Title 18 of the U.S. Code (§§ 1341 and 1346), and at least two provisions of RICO, 18 U.S.C. §§ 1962 and 1964. *See* Complaint filed March 4, 2010 ("Comp") at 1-3. Proceeding *pro se*, Stanton asserted 38 claims against 25 defendants, all of whom are employed by the State of Michigan's executive or judicial branches or one of its county or local government subdivisions' judicial or executive branches. *See* Comp ¶ 8. Stanton owned two parcels of real property in the City of Coldwater, Branch County, Michigan, and brought this action to remedy alleged violations of his constitutional and natural rights with regard to those properties, *see* Comp ¶¶ 244-245, including the right to freely acquire and keep private property without interference or harassment or overriding government claims thereto (consistent with the understanding which prevailed in the colonies and Great Britain before the founding of the United States of America), the right to be left alone, the right to the pursuit of happiness and prosperity, and the right to a republican form of government with checks and balances and strictly limited powers

where natural individual rights are not violated even with the approval of a majority of voters or elected officials or judges, *see* Comp ¶¶ 3-7 (citing Ex A ("Branch County Instrument #2006-07381, Page 34 ¶ 46")) and Comp ¶ 13. Although the caption does not state that Stanton is suing the defendants in their personal capacity, the body of the complaint does state that he is seeking monetary damages against them in that capacity. *See* Comp at 4, Section III-h.

Among many other types of relief sought in the complaint, Stanton's application for preliminary injunctive relief asked this court to prevent the State of Michigan from requiring him to pay the property taxes which a state tribunal has apparently held that he owes, as a condition precedent to bringing an appeal, by a March 14, 2010 deadline, in the Michigan state system. He contended that this court should reverse or disregard a judgment of the Branch County, Michigan Circuit Court holding that the law requires such payment in that sequence, on the ground that that court lacked jurisdiction and hence that the resultant judgment is void. Stanton explained that he cannot or will not simply pursue a direct appeal to the Michigan Court of Appeals because that court

> will completely subvert and circumvent any appeal of the Plaintiff thereby denying due process and creating yet another basis of charge against the Court of Appeals Judges and Clerks just as the Branch County Circuit Court and above named defendants have done yet again.

*Stanton v. Hutchins et al.*, 2010 WL 882822, *2 (W.D. Mich. Mar. 8, 2010) (Paul L. Maloney, C.J.) (quoting P's PI App at 2). This court determined, however, that

> Stanton has not yet demonstrated or adequately explained – if he ever will be able to do so – that the Michigan Court of Appeals allegedly 'subverted" or improperly thwarted or rejected his appeal from any judgment or order. Apparently Stanton argued before the Circuit Court of Branch County that that court lacked jurisdiction, relying on *Hibbs v. Winn*, 542 U.S. 88 (2004), which he characterized – without any quotation or citation to the majority opinion – as holding that "the State Courts lose absolute jurisdiction and protection of the Tax Injunction Act when their proceedings fail to allow and address constitutional arguments before them." P's PI App at 1-2.

*Stanton 1*, 2010 WL 882822 at *2. In any event, Stanton asked this court to preliminarily enjoin any action to enforce the Branch County Circuit Court judgment by way of foreclosure and/or eviction. This court denied Stanton's application for preliminary injunctive relief, finding that all four criteria weighed against granting such extraordinary relief. The court emphasized that Stanton appeared

> exceedingly unlikely to prevail on the merits of his claims. That alone requires denial of his application for preliminary injunctive relief, without consideration of the other three factors. * * *
>
> Even if the court did consider the other three factors, they would not alter the outcome; for example, neither Stanton nor the public interest would be harmed in any legally cognizable way by the court's refusal to preliminarily enjoin the complained-of actions and practices of the defendants when there is no precedent suggesting that such actions and practices give rise to any judicially enforceable federal cause of action on his part.

*Stanton 1*, 2010 WL 882822 at *7. As this court stated in *Stanton 1*,

> [In addition to the apparent likely lack of substantive merit in Stanton's claims], there is a second, independent reason why Stanton's attempt to eschew the normal state-court appellate process in favor of a preemptive federal "collateral attack" is unlikely to be approved by this court. Under the *Rooker-Feldman* doctrine , "'lower federal courts do not have jurisdiction to review a case litigated and decided in state court; only the United States Supreme Court has jurisdiction to correct state court judgments.'" *Robinson v. Wheeling & Lake Erie Ry. Co.*, 2009 WL 1015344, *2 (W.D. Mich. Apr. 15, 2009) (Maloney, C.J.) . . . .
>
> "This is equally true in constitutional cases brought under § 1983, since federal courts must give 'full faith and credit' to the judicial proceedings of state courts." *Gottfried*, 142 F.3d at 360. "Thus, even if the challenge is that the state court's action was unconstitutional, this court may not entertain the challenge." *Aslani v. Sparrow Health Sys. et al.*, No. 1:2008-cv-298, 2009 WL 3711602, *17 (W.D. Mich. Nov. 3, 2009) (Maloney, C.J.) (citing, *inter alia*, *D.C. Ct. of Apps. v. Feldman*, 460 U.S. 462, 485-86 (1983)). * * *
>
> Nor is this court likely to hold that Stanton may circumvent the *Rooker-Feldman* jurisdictional bar by arguing that the Branch County Circuit Court decision was not merely wrong but void *ab initio*. *See Searcy v. Clawson*, 70 F. App'x 907, 907-908 (8th Cir. 2003) (per curiam) (Bowman, Malloy, Smith) ("under the *Rooker-Feldman* rule, 'no federal district court has jurisdiction to decide that the state court judgment was void'") (quoting *Snider v. City of Excelsior Springs, Mo.*, 154 F.3d 809, 812 (8[th]

> Cir. 1998)); *see, e.g., Estate of Keys v. Union Planters Bank, N.A.*, 578 F. Supp.2d 629, 636-37 (S.D.N.Y. 2008) . . . .
>
> Consequently, even on fuller briefing and consideration, this court appears likely to hold that the only legitimate way for Stanton to secure federal-court review of the Michigan courts' judgment in his property-tax challenge (and their alleged refusal to consider constitutional arguments therein) is to seek review up to and including the Michigan Supreme Court before coming to federal court. "This is so because 28 U.S.C. § 1257, 'as long interpreted, vests authority to review a state court's judgment solely in the [U.S. Supreme] Court.'" *Schulze v. Claybanks Twp.*, 2009 WL 3586139, *12 (W.D. Mich. Oct. 23, 2009) (quoting *ExxonMobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005)). [footnote omitted]
>
> Thus, whether or not the Tax Injunction Act (28 U.S.C. § 1[3]41) [footnote omitted] bars this court from reviewing the Branch County Circuit Court's judgment, this court is likely to hold that the *Rooker-Feldman* doctrine does bar such review. *Cf. Zerod v. Caprathe*, 76 F. App'x 65 (6th Cir. 2003) (per curiam) (Siler, Batchelder, Cook) (*Rooker-Feldman* doctrine deprived district court of jurisdiction to hear former owners' civil-rights complaint attacking state judicial process which determined that they no longer owned real property which the state had seized for nonpayment of taxes); *Ritter v. Ross*, 992 F.2d 750 (7th Cir. 1993) (Coffey, Easterbrook, <u>Wood</u>) (*Rooker-Feldman* barred landowners from bringing federal-court action to challenge state-court foreclose judgment as violative of their due process rights, as they had not yet availed themselves of some state-law, state-court avenues to overturn the foreclosure judgment or recover the proceeds from the government's sale of their land).
>
> Accordingly, the court must decline to issue a temporary restraining order or a preliminary injunction of actions to enforce and implement the Branch County Circuit Court judgment of foreclosure or any other state-court judgment entered before the initiation of the instant action in connection with his property-taxation challenges. *See Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("While, as a general matter, none of these four factors [is] given controlling weight, *a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.*") . . . (emphasis added).

*Stanton 1*, 2010 WL 882822 at *10-11. Stanton filed a motion for reconsideration of the denial of preliminary injunctive relief, which this court denied, *see Stanton v. Hutchins*, 2010 WL1418563 (W.D. Mich. Apr. 7, 2010) (Maloney, C.J.) ("*Stanton 2*").

The State Defendants (nineteen defendants who are or were employed by the Michigan

Supreme Court, the Michigan Court of Appeals, the Branch County Circuit Court, or the State Tax Tribunal) moved to dismiss the complaint on several grounds; this court granted the motion, holding that the *Rooker-Feldman* doctrine barred lower federal courts from exercising jurisdiction. *See Stanton v. Hutchins*, 2010 WL 1692886, *5-7 (W.D. Mich. Apr. 26, 2010) (Maloney, C.J.) ("*Stanton 3*"). Alternately, this court held that even if *Rooker-Feldman* did not strip this court of subject-matter jurisdiction to review the Michigan trial court's order, it would abstain from exercising jurisdiction out of a proper deference to the Michigan state appellate courts, which he has never afforded an opportunity to rule on his constitutional claims. *See Stanton 3*, 2010 WL 1692886 at *7.

On June 11, 2010, plaintiff Stanton filed a motion which he denominates as "Mandatory Judicial Notice and Demand of Verification of Authority for Actions through Discovery, Return of Void Order, Rule 60(b)(4) Fed,R of C,P [sic]." As with Stanton's previous filings, this motion is often unclear, and it contains material which has little or no apparent relevance to his claims, let alone this court's jurisdictional dismissal of the complaint. To the extent that the motion can be deciphered, it patently lacks merit and must be denied.

Stanton's latest motion begins by stating that he "cannot consent to" the undersigned "attempting to answer a legal challenge to his actions by plaintiff through Writ of Error for void Judgment" because the undersigned "would be a biased judge in his own cause and must recluse [sic] himself for reasons stated in plaintiff's writ." Doc 48 at 1. Stanton, however, provides no basis for the undersigned to recuse himself, referring vaguely to "fraud and denial of due process, which is bad behavior and self evident in this case" and requesting copies of

> the Oaths of Office and bond numbers and all documents, signed agreements or oaths signed by the parties from the following Federal and STATE officials that would

> affect their citizenship [in] the United States or Oath to uphold the civil liberties of the People of the several states know[n] as the United States or is contrary to their oath of Office. Including all agreements with the American B.A.R [sic] Association.

*Id.* at 2. The court cannot fathom how discovery could be appropriate in a case already terminated for lack of jurisdiction and closed, nor has Stanton explained the nature of the alleged documents, agreements or oaths, let alone how they could require recusal or undermine the propriety of the court's jurisdictional ruling. And Stanton does not present authority, nor has the court located any, for the novel proposition that a court which has uncontested personal jurisdiction over a person nonetheless needs that person's consent to adjudicate a dispute involving that person, including the issuance of binding orders and judgments.

> Stanton next makes the sweeping, ill-explained accusation that unspecified persons
>
> have conspired and participated in the above numbered ongoing case in a[n] unlawful manner in [an] attempt to extort money for there [sic] personal gain or hide and ignore evidence of one of the largest crimes ever committed on the people of the United States by their Corporate Government employees. The taking of the people's homes, the lands of the people and throwing the families into the streets of this nation by misapplying the property tax laws, using fraudulent claims, extortion and denial of due process, as I have documented repeatedly in previous entered documents in affidavit form in this court and government records, that have never been denied in a proper lawful manner by defendants. All the fraudulent claims, smoke [and] mirrors and deception by the following B.A.R Attorney's [sic] will, never change these simple facts.

Doc 48 at 2-3. Stanton then refers to and quotes Article VI of the United States Constitution (the Supremacy Clause) and the Fifth Amendment's Takings Clause. *See id.* at 3-4. It appears that the "conspiracy" to which Stanton refers is meant to be some kind of conspiracy to maintain and enforce the Michigan state property-tax system and collect such taxes. Any such complaint goes to the substance of Stanton's claims regarding the Michigan state-court decision foreclosing his property for nonpayment of property taxes; as this court explained in *Stanton 3*, the *Rooker-Feldman* doctrine

bars any lower federal court – that is, any federal court except the United States Supreme Court – from exercising jurisdiction over this controversy as presented. Reiterating or refining complaints about the Michigan property tax system does nothing to undermine the court's jurisdictional ruling.

Stanton then complains that this court denied him a jury trial, *see* Doc 48 at 4-5, which is a meritless objection given that this court lacks jurisdiction to entertain the controversy in the first place. He then proceeds to re-argue the merits of the complaint – for instance, arguing that the Michigan Attorney General effectively conceded certain facts by "default[ing]" and failing to respond and rebut allegations which Stanton apparently made in an affidavit mailed to him (*id.* at 5), that the Michigan property tax statutes do not apply to Stanton (*id.* at 7), that state statutes cannot take precedence over the federal Constitution (*id.*), that attorneys cannot represent a defendant and testify as a witness in the same case (*id.*), and that "knowing statements of council [sic] can never be used to dismiss a case . . . ." *Id.* All of this again does nothing to suggest that this court erred in dismissing the case under *Rooker-Feldman*.

**Finally, the court will dispose of several meritless or improper nondispositive motions which Stanton has filed. In document 22,** filed March 31, 2010, Stanton asks the court to require the State Defendants to provide proof that they mailed documents 12 and 13 to him. Given the posture of this case, the court finds irrelevant Stanton's statement (Doc 22 at 2 ¶ 3) that he never received documents 12 and 13, which were the State Defendants' motion to dismiss or for summary judgment and the supporting brief. While Stanton denies receiving copies of the State Defendants' motion to dismiss or for summary judgment, he has not alleged that he timely received copies of the other defendants' motions to dismiss or for summary judgment. For example, Stanton has not denied that he timely received the motion for judgment on the pleadings filed by defendants Adams

and Budd on March 29, 2010 (docs 20 and 21); like the allegedly unmailed State Defendants' motion to dismiss, the motion of Adams and Budd expressly sought dismissal due to lack of jurisdiction under *Rooker-Feldman, see* Doc 21 at 5-7. Stanton had the opportunity to respond to that motion – and thus the very argument which led to the dismissal of his case – but he failed to file any brief in opposition to any defendant's dispositive motion. Moreover, Stanton *must* have received a copy of the State Defendants' motion to dismiss (docs 12 and 13, filed with the court on March 17, 2010) no later than March 30, 2010, because on March 31, 2010 he filed a motion to strike *that very motion and brief* as "scandalous, improper, and impertinent" (Doc 23).

**In document 24, also filed March 31, 2010, Stanton asks** the court to bar or limit the Michigan Attorney General's representation of defendants in this case; the court finds that this request is moot and pointless given that the court lacks jurisdiction to entertain this controversy, regardless of who represents the defendants, and has dismissed the complaint on that basis.

**In document 25, also filed March 31, 2010, Stanton asks** the court to correct all its records, and to direct the parties to correct their filings, to refer to him by his proper name. He objects to being referred to as "Jerry James Stanton" or "Stanton/Jerry/James" in the parties' filings and the court's orders because "no such corporations exist according to the State of Michigan", Doc 25 at 4 ¶ 7. This claim is specious, to say the least. The use of the name "Jerry James Stanton" in no way implies that Mr. Stanton is a corporation or "artificial person" rather than a natural, individual human being. Stanton has not provided proof that Jerry James Stanton is not his legal name, so the court perceives no impropriety or inaccuracy in the use of that name or its customary abbreviation to "Stanton." Nor, in the context of this controversy, would any reasonable, competent person be confused as to the identity of the person to whom the court and the parties have referred

to as "Jerry James Stanton" or "Stanton."

**In document 32, filed April 6, 2010, Stanton seeks sanctions** against attorneys Aseltyne, Fedynsky, and Bogren. **In document 43, filed May 3, 2010, Stanton seeks sanctions** against these same three attorneys, and against their law firms and the Michigan Attorney General's Office, and to strike certain of their submissions, and makes various arguments. But neither of these latter two documents complies with this court's local civil rules. These motions fail to describe the efforts that Stanton made, if any, to obtain the concurrence of opposing counsel before filing the motion. W.D. MICH. LCIVR 7.1(d), entitled Attempt to Obtain Concurrence, provides:

> With respect to all motions, the moving party shall ascertain whether the motion shall be opposed. * * * All motions shall affirmatively state the efforts of the moving party to comply with the obligation created by this rule.

"The importance of the communication required by this rule . . . cannot be overstated." *ECM Converting Co. v. Corrugated Supplies Co., LLC*, 2009 WL 385549, *2 (W.D. Mich. Feb. 13, 2009) (quoting *Woodhull v. Kent Cty.*, 2006 WL 708662, *1 (W.D. Mich. Mar. 21, 2006) (Miles, J.)).

"The remedy for failure to seek concurrence under the Local Rule 7.1(d) is denial of the motion without prejudice . . . ." *Piers v. Higgs*, 2009 WL 210997, *2 (W.D. Mich. Jan. 27, 2009) (Maloney, C.J.) (citing *Yetman v. CSX Transp., Inc.*, 2009 WL 35351, *1 (W.D. Mich. Jan. 6, 2009) (Maloney, C.J.)). *See, e.g., Aslani v. Sparrow Health Sys.*, 2008 WL 4642617 (W.D. Mich. Oct. 20, 2008) (Maloney, C.J.) (denying motion without prejudice for failure to comply with LCivR 7.1(d)); *Kim v. USDOL*, 2007 WL 4284893, *1 (W.D. Mich. Dec. 4, 2007) (Brenneman, M.J.) ("[T]he court properly denied plaintiff's motion for judgment on the pleadings because he failed to seek concurrence under the local court rule, W.D. MICH. LCIVR 7.1(d) . . . .").[1]

---

[1] *Cf. Weiss v. Kempthorne*, 2009 WL 2095997, *4 n.5 (W.D. Mich. July 13, 2009) (Robert

The parties are also advised that failing to afford the opposing party a reasonable period of time to respond to the concurrence request may not constitute compliance with the rule. *Cf., e.g., Powers v. Thomas M. Cooley Law School*, 2006 WL 2711512, *3 (W.D. Mich. Sept. 27, 2006).

**ORDER**

Plaintiff's "Motion for Order for Presentment of Evidence of Actual Service by Office of Attorney General of Michigan and to Prove Service of All Pleadings" **[doc #22] is DENIED**.

Plaintiff's "Motion for Order to Bar and Limit Representation by the Office of the Attorney General of Michigan" **[doc #24] is DENIED**.

Plaintiff's "Motion for Order, That Defendants, Counsels for Defendants, and the Clerk of the Court Properly Address the Plaintiff" **[doc #25] is DENIED**.

Plaintiff's FED. R. CIV. P. 60(b) motion for relief from judgment **[doc # 48] is DENIED**.

Plaintiff's motion at **document #32 is DENIED without prejudice**.

Plaintiff's motion at **document #43 is DENIED without prejudice**.

Plaintiff **SHALL NOT FILE** any further documents relating to the merits of the complaint unless he first obtains leave of court. If plaintiff files such a document, the court will reject the

---

Holmes Bell, J.) ("Having inserted this request into their objections to the administrative record, the Court is also concerned about its procedural propriety. It is not clear to the Court that . . . Plaintiffs have complied with the local rules regarding motion practice, such as attempting to obtain concurrence from opposing counsel . . . .") (citing W.D. MICH. LCIVR 7.1);

*Molinares v. Limon*, 2009 WL 1542896, *1 n.2 (W.D. Mich. June 2, 2009) (Robert Jonker, J.) ("Defendant requested leave to file a reply to one of Plaintiff's responses, but Defendant's motion failed to comply with Local Rule 7.1(d) because he did not indicate whether Plaintiff would oppose the motion. * * * Accordingly, the Court will deny the motion.");

proposed filing and may require plaintiff to pay a monetary sanction (money fine).

This case is **TERMINATED** and **CLOSED**.

This is a final and immediately appealable order.

**IT IS SO ORDERED** on this 18th day of June 2010.

                                                /s/ Paul L. Maloney
                                                Honorable Paul L. Maloney
                                                Chief United States District Judge